IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GCU f/k/a GREEK CATHOLIC UNION OF THE U.S.A., | ) ) ) | |
| | ) | 2:19-cv-00414-RJC |
| Plaintiff, | ) ) | |
| | ) | Judge Robert J. Colville |
| vs. | ) ) | |
| HUNTINGTON NATIONAL BANK, | ) ) ) | |
| | ) | |
| Defendant/Third-Party Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| CIM INVESTMENT MANAGEMENT, INC., | ) ) ) | |
| | ) | |
| Third-Party Defendant. | ) ) | |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court is the Motion to Dismiss Third-Party Complaint (ECF No. 22) filed by

Third-Party Defendant CIM Investment Management, Inc. ("CIM"). CIM requests that this Court

dismiss the Amended Third-Party Complaint (ECF No. 21) filed by Defendant/Third-Party

Plaintiff Huntington National Bank ("Huntington"). This matter has been fully briefed and is ripe

for disposition.

I.      **Factual Background & Procedural History**

In its April 11, 2019 Complaint (ECF No. 1), Plaintiff GCU f/k/a Greek Catholic Union of

the U.S.A. ("GCU") asserts claims against Huntington, and sets forth the following allegations

relevant to the Motion at issue:

1

GCU and Huntington entered into a Custody Agreement dated April 2, 2009 (the "Custody Agreement"), pursuant to which Huntington was obligated to hold, safekeep, and invest certain GCU assets.  Compl. ¶ 8, ECF No. 1.  Pursuant to the Custody Agreement, Huntington held GCU assets as custodian, including notes held by GCU that had been issued by Illinois Power Generation Company ("Genco").  *Id.* at ¶ 9.  These Genco-issued notes are more specifically identified as CUSIP No. 02360XAL1 in the amount of $900,000, and CUSIP No. 02360XAM9 in the amount of $1,000,000 (collectively, the "GCU Notes").  *Id.* at ¶ 10.  In the Custody Agreement, Huntington expressly "acknowledges that it is a fiduciary regarding the safekeeping of assets in its custody. . . ."  *Id.* at ¶ 13 (quoting Compl. Ex. A at § 1).  Under the Custody Agreement, Huntington was required to follow the instructions of GCU or its investment manager regarding investment or reinvestment of the GCU Notes.  Compl. ¶ 14, ECF No. 1.  Pursuant to the Custody Agreement, Huntington was authorized to "[a]pprove, adopt or join in any plan or agreement of reorganization, consolidation, merger, sale of the assets or any other action of any corporation, the securities of which shall constitute a part of the Investment Fund [as defined therein] as directed by [GCU] or as [GCU], in principal, delegates."  *Id.* at ¶ 15 (quoting Compl. Ex. A at § 2.3(c)).  Huntington further agreed to indemnify GCU for any loss of securities resulting from Huntington's negligence or dishonesty.  *Id.* at ¶ 16.  If notice from Huntington to GCU is required under the Custody Agreement, that notice was required to be in writing.  *Id.* at ¶ 17.

While Huntington holds the GCU Notes in "street name," the legal holder of the GCU Notes is the Depository Trust Company ("DTC").  Compl. ¶ 18, ECF No. 1.  Under this arrangement, Huntington serves as a brokerage firm, DTC holds legal title to the GCU Notes, and

GCU is the beneficial owner of the GCU Notes.  *Id.* at ¶ 20; 22.[1]  As the brokerage firm, Huntington is listed in the ownership records of DTC.  *Id.* at ¶ 21.

On December 9, 2016, Genco filed a petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas at Case No. 16-36326-MI (the "Bankruptcy Case").  Compl. ¶ 25, ECF No. 1.  The Bankruptcy Case was initiated for the purposes of restructuring a series of notes issued by Genco (the "Genco Notes"), including the GCU Notes.  *Id.* at ¶ 26.  On the same date, Genco also filed a Prepackaged Chapter 11 Plan of Reorganization (the "Genco Plan"), an Offering Memorandum and Indenture Consent Solicitation Statement and Disclosure Statement Soliciting Acceptances of a Prepackaged Plan of Reorganization (the "Disclosure Statement"), and an Emergency Motion for entry of an order establishing procedures for plan solicitation and approval (the "Procedures Motion").  *Id.*  Under the Genco Plan, eligible noteholders could tender their existing Genco Notes in exchange for certain cash distributions, new notes, and warrants issued by Genco's parent company.  *Id.* at ¶¶ 23; 28.

On December 12, 2016, the Bankruptcy Court granted Genco's Procedures Motion, and, in doing so, approved a form eligibility letter (the "Eligibility Letter") to be sent to holders of Genco's notes with respect to eligibility to participate in the Genco Plan.  Compl. ¶ 34, ECF No. 1.  Under the Genco Plan, any noteholder who failed to return the Eligibility Letter on or before July 17, 2017 "would have its Class 5 Claim, and its right to any distribution under the Genco Plan, discharged and forfeited and would not be permitted to participate in any distribution under the Genco Plan in respect of its Class 5 Claim."  Compl. ¶ 35, ECF No. 1.  Pursuant to the order granting the Procedures Motion, brokers, dealers, commercial banks, trust companies, or other

---

[1] The Court notes that Huntington denies that it is a "brokerage firm," and avers that it is instead a "custodian."  Answer ¶ 20, ECF No. 8.

agents or nominees through which beneficial owners hold their notes were required to forward copies of the Eligibility Letter to beneficial owners of the Genco Notes. *Id.* at ¶ 36. The Bankruptcy Court ultimately approved the Genco Plan and Disclosure Statement at a confirmation hearing on January 25, 2017. *Id.* at ¶ 37.

DTC, the holder of legal title to the GCU Notes, provides several services through which Huntington was notified of, or could have discovered, the existence of the Bankruptcy Case and the Eligibility Letter. Compl. ¶¶ 40; 45; 47, ECF No. 1. Huntington was served with the Eligibility Letter and notice of the January 25, 2017 confirmation hearing on December 13, 2017. *Id.* at ¶¶ 55; 58. Despite the above, Huntington did not provide notice of the Genco Plan, the Disclosure Statement, the Eligibility Letter, or the confirmation hearing to GCU. Compl. ¶ 39, ECF No. 1. Consequently, GCU was unable to file an objection to the Genco Plan or a proof of claim in the Bankruptcy Case, and was unable to submit the Eligibility Letter by the July 17, 2017 deadline. *Id.* at ¶ 39. As a result of GCU's failure submit the Eligibility Letter, GCU's Class 5 Claim and its right to any distribution under the Genco Plan were discharged and forfeited, thus rendering the GCU Notes worthless. *Id.*

In its Amended Third-Party Complaint (ECF No. 21) and Answer (ECF No. 8), Huntington sets forth the following allegations relevant to CIM's Motion:

GCU and CIM are parties to an Investment Advisory Agreement dated March 13, 1998 (the "Investment Advisory Agreement"). Am. Third-Party Compl. ¶ 5, ECF No. 21. Pursuant to the Investment Advisory Agreement, CIM serves as GCU's investment adviser and manages a portfolio of investments and assets, including the GCU Notes, on behalf of GCU in accordance with GCU's investment policies and objectives. *Id.* at ¶¶ 5; 10. Under the terms of the Investment Advisory Agreement, GCU was required to enter into a custodial agreement with respect to its

portfolio of assets and investments with a custodian selected by CIM.  Answer ¶ 37; Ex. 1 at ¶ 3, ECF No. 8.  Huntington was retained as custodian.  Am. Third-Party Compl. ¶ 6, ECF No. 21. Huntington holds the assets which make up this portfolio as a custodian in a segregated account for GCU's benefit under the Custody Agreement, but is prohibited from taking action with respect to the assets in the absence of express direction from GCU or its designees, including CIM.  *Id.* at ¶¶ 6-7.

Under the terms of the Investment Advisory Agreement, CIM is responsible for determinations regarding whether to buy, sell, or exercise any other rights in connection with GCU's portfolio of asserts and securities.  Am. Third-Party Compl. ¶ 8, ECF No. 21.  On February 13, 2017, Broadridge Financial Solutions, Inc., on behalf of Huntington, sent notice of Genco's Chapter 11 bankruptcy case, the Genco Plan, the Disclosure Statement, the Procedures Order, the Eligibility Letter, and other related documentation to CIM.  *Id.* at ¶ 17.  Despite receipt of such notice and documentation, CIM did not provide documents related to the Bankruptcy Case to GCU or advise GCU of its rights under the Genco Plan.  *Id.* at ¶ 19.  Rather, CIM advised GCU that GCU would receive replacement securities as a result of Genco's bankruptcy filing without taking any additional action.  *Id.* at ¶ 20.  Because GCU did not submit the Eligibility Letter, the GCU Notes were rendered worthless.  *Id.* at ¶ 21.

On April 11, 2019, GCU filed its Complaint (ECF No. 1) against Huntington, asserting claims for breach of contract (Count I), breach of fiduciary duty (Count II), and indemnification (Count III).  Huntington filed its Amended Third-Party Complaint (ECF No. 21) against CIM on September 3, 2019, asserting claims for contribution (Count I), common law indemnification (Count II), breach of contract – third-party beneficiary (Count III), and negligent misrepresentation (Count IV).  In its Amended Third-Party Complaint, Huntington asserts that it fulfilled its

obligations to GCU under the Custody Agreement by forwarding the documents related to the

Genco Bankruptcy Case to CIM.  Am. Third-Party Compl. ¶ 24, ECF No. 21.  CIM filed a timely

Motion to Dismiss (ECF No. 22) and Brief in Support (ECF No. 23) on September 17, 2019.  CIM

seeks dismissal of each of the claims set forth in Huntington's Amended Third-Party Complaint.

On October 17, 2019, Huntington filed a Brief in Opposition (ECF No. 28) to CIM's Motion.  CIM

filed its Reply Brief (ECF No. 30) on October 31, 2019.

## II.      Legal Standard

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the

legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).   In

deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail

on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled

factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S.*

*Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  While a complaint does not need

detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide

more than labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A

"formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Papasan v.*

*Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at

678 (citing *Twombly*, 550 U.S. at 556).  The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997).

"If a plaintiff requests leave to amend a complaint vulnerable to dismissal before a responsive pleading is filed," a court must permit amendment unless it would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). "When a plaintiff does

not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." *Grayson*, 293 F.3d at 108.

### III.   Discussion

CIM's Motion to Dismiss seeks dismissal of each of the claims set forth in Huntington's Amended Third-Party Complaint.

### A.  Breach of Contract – Third-Party Beneficiary Claim

CIM asserts that Huntington's claim for breach of contract – third-party beneficiary (Count III) fails because Huntington is not an intended third-party beneficiary under the Investment Advisory Agreement.  Br. in Supp. 2, ECF No. 23.  CIM argues that GCU and CIM did not expressly name Huntington in the Investment Advisory Agreement, which was entered into approximately eleven years prior to the date that GCU and Huntington entered into the Custody Agreement, and that the Investment Advisory Agreement in no way indicates that CIM and GCU intended to give Huntington the benefit of CIM's promised performance.  *Id.*  Huntington argues that the issue of whether CIM and GCU intended the eventual custodian, i.e. Huntington, to be a third-party beneficiary under the Investment Advisory Agreement presents a question of fact that cannot be decided on a motion to dismiss.  Br. in Opp'n 4, ECF No. 28.

"[A]n action on a contract cannot be maintained against a person who is not a party to the contract unless the plaintiff is a third party beneficiary of the contract." *Pittsburgh Logistics Sys., Inc. v. Landstar Ranger, Inc.*, No. 2:17-cv-1667, 2018 WL 4096282, at *5 (W.D. Pa. Aug. 28, 2018) (quoting *Commonwealth, State Pub. Sch. Bldg. Auth. v. Noble C. Quandel Co.*, 137 Pa.Cmwlth. 252, 585 A.2d 1136, 1140 (Pa. Commw. Ct. 1991)).  With respect to third-party beneficiaries, the Supreme Court of Pennsylvania has explained:

> [A] party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself, *unless*, the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Scarpitti v. Weborg*, 609 A.2d 147, 150–51 (Pa. 1992) (citations omitted).  A third party must be an intended, as opposed to incidental, beneficiary in order to bring a breach of contract action. *Scarpitti*, 609 A.2d at 150.  "[I]t is not enough that a contract has the result of benefiting a third party; rather, the third-party beneficiary must be 'within [the promisor's] contemplation at the time the contract was entered into and [the promisor's] liability was intentionally assumed by him in his undertaking.'" *Three Rivers Hydroponics, LLC v. Florists' Mut. Ins. Co.*, No. 2:15-cv-00809, 2018 WL 791405, at *3 (W.D. Pa. Feb. 8, 2018) (quoting *PA Energy Vision, LLC v. S. Avis Realty, Inc.*, 120 A.3d 1008, 1015 (Pa. 2015)).  "Thus, under Pennsylvania law, to be a third-party beneficiary, either (1) this status must be expressly set out in the contract itself, or (2) the circumstances for finding third-party beneficiary [status] must be 'compelling.'" *Three Rivers Hydroponics, LLC*, 2018 WL 791405, at *3 (citing *Brand v. AXA Equitable Life Ins. Co.*, No. 08-cv-2859, 2008 WL 4279863, at *2 (E.D. Pa. Sept. 16, 2008)).

In *Scarpitti v. Weborg*, 609 A.2d 147 (Pa. 1992), the Supreme Court of Pennsylvania found that the circumstances in that case were sufficiently compelling to establish that certain homeowners were intended third-party beneficiaries of a contract between a developer and an architect.  The Supreme Court of Pennsylvania explained:

> In this case, the architect is the promisor, promising to enforce deed restrictions which carry out the developer's intention to benefit the homeowners.  The developer, the promisee, intends that the homeowners have the benefit of the architect's performance.  Thus, it is patently clear that the parties, by establishing a vehicle for the enforcement of deed restrictions, intended to benefit the homeowners who purchased lots in the Winchester South Subdivision, at the time

9

the contract was entered into.   Although not individually named, appellee homeowners were part of a limited class of persons intended to benefit from the agreement between appellant and Winchester, thus satisfying the second prong of *Guy* and subsection (b) of § 302 Restatement (Second) of Contracts (1979).  In fact, we have not been informed of any other purpose for the employment of appellant to review construction plans, but for the benefit of the homeowners in the subdivision.

*Scarpitti*, 609 A.2d at 151.

In support of its breach of contract claim, Huntington avers that CIM, as GCU's investment adviser pursuant to the Investment Advisory Agreement, determines whether to buy, sell, or exercise rights with respect to GCU's assets and investments.  Am. Third-Party Compl. ¶ 41, ECF No. 21.  Huntington further avers that, "[a]s GCU's investment advisor, CIM must continuously monitor the Portfolio of investments made on behalf of GCU and take all steps necessary and appropriate to maximize the value of those investments and otherwise achieve GCU's investment objectives."  *Id.* at ¶ 42.  Huntington asserts that CIM breached this duty under the Investment Advisory Agreement when CIM failed to forward Bankruptcy Case documents to GCU and when it failed to advise GCU of GCU's obligations under the Genco Plan.  *Id.* at ¶ 43.  In support of its assertion that it is an intended third-party beneficiary to the Investment Advisory Agreement, Huntington avers that it "directly benefits from CIM's and GCU's performance under the terms of the Investment Advisory Agreement, as it receives compensation to serve as custodian in connection with Portfolio assets.  Moreover, without the Investment Advisory Agreement, there would be no Portfolio assets in Huntington's custody."  *Id.* at ¶ 39.

Initially, the Court notes that the issue of whether a party is an intended third-party beneficiary may be determined by way of a motion to dismiss.  *See Three Rivers Hydroponics, LLC v. Florists' Mut. Ins. Co.*, No. 2:15-cv-00809, 2018 WL 791405 (W.D. Pa. Feb. 8, 2018); *Brand v. AXA Equitable Life Ins. Co.*, No. 08-cv-2859, 2008 WL 4279863 (E.D. Pa. Sept. 16,

2008); *Republic Servs. of Pennsylvania, LLC v. Caribbean Operators, LLC*, 301 F. Supp. 3d 468, 477 (E.D. Pa. 2018).  In the present case, the Investment Advisory Agreement anticipates GCU entering into a custodial agreement with a custodian, as evidenced by the following provisions:

> GCU will enter into a custodial agreement with respect to the Portfolio with a custodian selected by CIM, a copy of which agreement shall be furnished to GCU. Such agreement will provide that the funds and investments of the Portfolio shall be held in a segregated account and will not be pooled with funds or investments of any other entity or person, public or private.
>
> Prior to selecting a broker, custodian or any other service provider to whom GCU will be obligated to pay fees, CIM shall solicit bids and submit same to GCU for review and approval, if applicable.

Answer Ex. 1 at ¶¶ 3; 11, ECF No. 8.  Upon review of these provisions and the entire Investment Advisory Agreement, the Court finds that GCU, as promisee, and CIM, as promisor, did not explicitly express an intent to give the benefit of CIM's performance to the eventual custodian, i.e. Huntington, in the Investment Advisory Agreement.  The Court further finds that CIM did not expressly undertake any responsibility with respect to the eventual custodian at the time the Investment Advisory Agreement was executed.  As such, the Court must look to whether the circumstances are so compelling that recognition of Huntington's right to performance is appropriate to effectuate the intention of CIM and GCU, and whether performance satisfies an obligation of GCU to pay money to Huntington or the circumstances indicate that the GCU intended to give Huntington the benefit of CIM's promised performance.  *Scarpitti v. Weborg*, 609 A.2d 147, 150–51 (Pa. 1992)

Huntington does not allege or argue that CIM's performance will satisfy an obligation of GCU to pay money to Huntington.  Further, as currently pled, Huntington's Amended Third-Party Complaint sets forth no allegations to support a finding that the circumstances in this case indicate that GCU, as promisee, intended Huntington to receive the benefit of CIM's performance.  Rather,

Huntington has simply pled, in conclusory fashion, that "Huntington is a third-party beneficiary of the Investment Advisory Agreement."  Am. Third-Party Compl. ¶ 40, ECF No. 21.  The circumstances in this case, as alleged, tend to show that CIM undertook duties, specifically an alleged duty to monitor and/or maximize GCU's investments and an alleged duty to achieve GCU's investment objectives, that were owed only to GCU for GCU's benefit alone.  Further, despite the fact that the parties to the Investment Advisory Agreement expressly acknowledge and plan for GCU's retention of a custodian for GCU's assets, the parties do not direct that such a custodian will be entitled to the benefit of CIM's performance under the Investment Advisory Agreement.  While Huntington may have benefitted, via its work for GCU pursuant to the Custody Agreement, from CIM's performance of CIM's contractual duties owed to GCU, it was as an incidental beneficiary under the facts presently alleged as opposed to an intended one.  Accordingly, the Court finds that the circumstances, as pled, do not indicate that GCU, as promisee, intended to give the eventual custodian, Huntington, the benefit of CIM's promised performance at the time the Investment Advisory Agreement was executed.

In light of the above, the Court finds that GCU and CIM did not explicitly express an intention to benefit Huntington, the custodian under the Investment Advisory Agreement, in the Investment Advisory Agreement.  The Court further finds that Huntington fails to set forth facts sufficient to support a finding that the circumstances in this case indicate that GCU intended Huntington to receive the benefit of CIM's performance under the Investment Advisory Agreement.  The Court thus finds that Huntington fails to sufficiently allege its status as an intended third-party beneficiary to the Investment Advisory Agreement.  As such, Huntington fails to state a claim to relief for breach of contract that is plausible on its face.  Accordingly, the Court

12

will grant CIM's Motion to Dismiss with respect to Huntington's breach of contract –third-party beneficiary claim (Count III).

### B. Negligent Misrepresentation Claim

CIM also seeks dismissal of Huntington's claim for negligent misrepresentation (Count IV).  CIM argues that Huntington's negligent misrepresentation claim fails to set forth allegations sufficient to allege that: 1) CIM owed a duty to Huntington; 2) CIM made any representation intended to induce action on the part of Huntington; 3) Huntington justifiably relied on CIM's representations; 4) CIM misrepresented present facts; and 5) CIM should have known that its representations were false at the time they were made.  Br. in Supp. 9-11, ECF No. 23.  Huntington argues that CIM had a duty to communicate information regarding GCU's investments with competence, and that CIM breached that duty.  Br. in Opp'n 8, ECF No. 28.  Huntington further argues that CIM's assertions regarding justifiable reliance, CIM's intention to induce action on Huntington's part, and CIM's knowledge of the falsity of its statements, are factual in nature and cannot be resolved at this juncture.  *Id.*  Huntington also argues that it alleges that CIM misrepresented present facts, and not that CIM made past representations respecting future actions. *Id.* at 9.

To sufficiently set forth a claim for negligent misrepresentation, a plaintiff must allege "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation."  *Gongloff Contracting, L.L.C. v. L. Robert Kimball & Assocs., Architects & Engineers, Inc.*, 119 A.3d 1070, 1076 (Pa. Super. 2015) (quoting *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 277 (Pa. 2005)).  It is well established that, "[a] cause of action in negligence requires

13

allegations that establish the breach of a legally recognized duty or obligation that is causally connected to the damages suffered by the complainant." *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 280 (Pa. 2005) (quoting *Sharpe v. St. Luke's Hospital*, 573 Pa. 90, 821 A.2d 1215, 1218 (2003)).

With respect to allegations respecting promises of future action set forth in support of a negligent misrepresentation claim, the United States District Court for the Eastern District of Pennsylvania has explained:

> At the time that a statement is made regarding what the speaker intends to do in the future, the speaker either intends at the moment to take the action he is promising or not. The speaker cannot be negligent as to his future intentions. Therefore, for a claim of negligent misrepresentation there is no exception to the rule that a misrepresentation must be of a present fact and not a future intention like there is with a claim of fraudulent misrepresentation.

*Bennett v. Itochu Int'l, Inc.*, 682 F. Supp. 2d 469, 480–81 (E.D. Pa. 2010) (citations omitted); *see also Alpine Bank v. Hubbell*, 555 F.3d 1097, 1107 (10th Cir. 2009) ("But a promise in itself contains no assertion of fact other than the implied representation that the speaker intends to perform the promise.").

In support of its negligent misrepresentation claim, Huntington asserts that CIM represented that:

> a) it would actively monitor the Portfolio and to otherwise exercise due care in connection with its management of the Portfolio; (b) all decisions with respect to the management of Portfolio securities rested with CIM; and (c) it would take all steps necessary and appropriate to maximize the value of those investments and otherwise achieve GCU's investment objectives.

Am. Third-Party Compl. ¶ 47, ECF No. 21. The Court notes that Huntington does not set forth in its Amended Third-Party Complaint or its Brief in Opposition when or in what manner CIM made the alleged misrepresentations at issue to Huntington.

While Huntington argues in its Brief that these representations were misrepresentations of present facts and were not promises to do something in the future, this argument is belied by the allegations in its Amended Third-Party Complaint.   Huntington alleges that CIM made representations regarding its intended future actions, i.e. that CIM stated that it *would* monitor GCU's investments, exercise care in managing the investments, take responsibility for management of the investments, maximize those investments, and achieve GCU's investment objectives.   Am. Third-Party Compl. ¶ 47, ECF No. 21.   These allegations can only be characterized as promises to take some action in the future, and thus cannot support a claim for negligent misrepresentation.  *See Bennett v. Itochu Int'l, Inc.*, 682 F. Supp. 2d 469, 480–81 (E.D. Pa. 2010).[2]  To the extent Huntington's claim attempts to set forth an allegation of fraud, Fed. R. Civ. P. 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Huntington does not set forth in its Amended Third-Party Complaint when or in what manner CIM made the alleged misrepresentations at issue to Huntington.  For the reasons discussed above, this Court will grant CIM's Motion to Dismiss as to Huntington's negligent misrepresentation claim (Count IV).

## C.  Common Law Indemnification Claim

CIM's Motion to Dismiss next seeks dismissal of Huntington's claim for common law indemnification (Count II).  CIM argues that Huntington fails to allege any legal relationship that could result in Huntington being secondarily liable for CIM's alleged misconduct.  Br. in Supp. 12, ECF No. 23.  CIM argues that, should Huntington prove that Huntington was not at fault in

---

[2] The Court notes that the present action involves a situation wherein a defendant allegedly made a statement about its own intended actions, and thus does not implicate the exception to the rule set forth in *Bennett*.  *See W. Chester Univ. Found. V. MetLife Ins. Co. of Connecticut*, 259 F. Supp. 3d 211, 221 (E.D. Pa. 2017) ("Judge Joyner carved out an exception to the general rule disallowing negligent misrepresentation claims based on representations of future occurrences." (citing *Killian v. McCulloch*, 850 F. Supp. 1239 (E.D. Pa. 1994))).

this litigation, the same would be a complete defense to GCU's claims.  *Id.*  CIM further argues that Huntington's claim for indemnification fails because it is grounded in contract.  *Id.* Huntington asserts that this Court cannot determine, at this stage of the litigation, whether Huntington has presented a complete defense, and argues that it is entitled to seek indemnification from the entity that is actually at fault for GCU's alleged loss.  Br. in Opp'n 9, ECF No. 28. Huntington further argues that common law indemnification involves questions of fact, and that this Court thus cannot dismiss its claim for indemnification at this stage of the proceedings.  *Id.* at 10.  Huntington also asserts that it is an agent of CIM under the Custody Agreement and is required to follow CIM's instructions, and that the principal-agent relationship is one of the express legal relationships from which the right to common law indemnification arises.  *Id.*

"[C]ommon law indemnity is an 'equitable remedy that shifts the entire responsibility for damages from a party who, without any fault, has been required to pay because of a legal relationship to the party at fault."  *EQT Prod. Co. v. Terra Servs., LLC*, 179 F. Supp. 3d 486, 493 (W.D. Pa. 2016) (quoting *City of Wilkes–Barre v. Kaminski Bros.*, 804 A.2d 89, 92 (Pa. Commw. Ct. 2002)).  In *City of Wilkes-Barre v. Kaminski Bros.*, the Commonwealth Court of Pennsylvania explained:

> Common law indemnity is not a fault-sharing mechanism that allows a party, whose negligence was minor, to recover from the tortfeasor whose negligence was dominant.  It is a fault-shifting mechanism that comes into play when a defendant held liable by operation of law seeks to recover from a defendant whose conduct actually caused the loss.

*City of Wilkes-Barre v. Kaminski Bros.*, 804 A.2d 89, 92 (Pa. Commw. Ct. 2002).  Common law indemnity is not available for breach of contract claims.  *EQT*, 179 F. Supp. 3d at 493-94 (W.D. Pa. 2016).

In Pennsylvania, a party who has secondary liability may recover indemnification against the party who has primary liability. *City of Wilkes-Barre*, 804 A.2d at 92. "The distinction between primary and secondary liability has no connection to degrees of fault or comparative negligence; indeed, there can be no indemnity between parties who each bear responsibility for the wrong, albeit of varying degrees." *Id*. at 92 n.5. With respect to secondary liability, the Supreme Court of Pennsylvania has explained:

> Secondary liability exists, for example, where there is a relation of employer and employee, or principal and agent; if a tort is committed by the employee or the agent recovery may be had against the employer or the principal on the theory of respondeat superior, but the person primarily liable is the employee or agent who committed the tort, and the employer or principal may recover indemnity from him for the damages which he has been obliged to pay.

*Builders Supply Co. v. McCabe*, 77 A.2d 368, 370 (Pa. 1951). With regard to the distinction between primary and secondary liability, the Supreme Court of Pennsylvania further explained:

> But the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible. In the case of concurrent or joint tortfeasors, having no legal relation to one another, each of them owing the same duty to the injured party, and involved in an accident in which the injury occurs, there is complete unanimity among the authorities everywhere that no right of indemnity exists on behalf of either against the other; in such a case, there is only a common liability and not a primary and secondary one, even though one may have been very much more negligent than the other. The universal rule is that when two or more contribute by their wrongdoing to the injury of another, the injured party may recover from all of them in a joint action or he may pursue any one of them and recover from him, in which case the latter is not entitled to indemnity from those who with him caused the injury.

*McCabe*, 77 A.2d at 371.

Huntington asserts that CIM had a duty, owed to GCU, to actively monitor GCU's assets and investments, and that CIM failed in that duty when it failed to forward the documents at issue in this litigation to GCU or advise GCU of its obligations under the Genco Plan. Am. Third-Party

17

Compl. ¶ 33-34, ECF No. 21   While Huntington asserts in its Brief that it is CIM's agent, Huntington fails to set forth facts in its Amended Third-Party Complaint which explain this asserted principal-agent relationship between Huntington and CIM as it relates to providing notice to GCU regarding risks to GCU's assets.   While Huntington and CIM each have responsibilities with respect to GCU's assets and investments under the Custody Agreement and the Investment Advisory Agreement respectively, Huntington does not allege that CIM exerts control over Huntington with respect to Huntington's reporting of information regarding GCU's assets to GCU. Further, Huntington does not set forth facts which tend to establish that Huntington and CIM collaborate in any way in communicating information to GCU regarding GCU's assets, or that CIM directed Huntington to do anything with respect to the information and documents at issue in this case.

In light of the above, it is not clear how Huntington, as CIM's purported agent, could be vicariously or secondarily liable for the actions or inactions of CIM, the purported principal. Huntington asserts that it satisfied its duty to GCU by sending the documents at issue to CIM.  Am. Third-Party Compl. ¶ 24-25, ECF No. 21.  As discussed above, Huntington has set forth nearly no facts supporting a principal-agent relationship between Huntington and CIM with respect to the reporting of information regarding GCU's assets and investments to GCU.  If Huntington is correct that it satisfied any legal duty owed to GCU by sending documents to CIM, then Huntington cannot be held liable for violating this duty and it has set forth a complete defense.   If, however, Huntington and CIM each maintained a separate, noncontractual duty to notify GCU of the Bankruptcy Case and the Eligibility Letter directly, it cannot be said, at least based upon the facts alleged, that Huntington's liability would be imputed or constructive only.  Rather, under such a scenario, Huntington maintained an independent duty to notify GCU, and not CIM, and would

18

have contributed to GCU's injury through its own wrongdoing, i.e. the failure to send documents to the appropriate party, and would be subject to common liability as opposed to primary and secondary liability.  Huntington fails to plead the existence of a legal relationship that would result in secondary liability on the part of Huntington for the alleged harm caused by CIM.  Accordingly, for the reasons set forth above, the Court will grant CIM's Motion to Dismiss with respect to Huntington's claim for common law indemnification (Count II).

### D.  Contribution Claim

CIM also moves to dismiss Huntington's claim for contribution (Count I).  CIM argues that Huntington's contribution claim should be dismissed because contribution is only available among joint tortfeasors and because: 1) GCU's claims against Huntington sound in contract, and GCU's breach of fiduciary duty claim, i.e. its only tort claim, against Huntington is thus barred by the gist of the action doctrine; 2) Huntington fails to allege potential tort liability between CIM and GCU; and 3) any potential tort claims against CIM are barred by the gist of the action doctrine or the economic loss doctrine.  Br. in Supp. 12-20, ECF No. 23.  Huntington argues that it would be premature at this stage of the litigation for this Court to determine whether the gist of the action doctrine and/or the economic loss doctrine bar any tort claims which: 1) have been asserted against Huntington; or 2) could be asserted against CIM.  Br. in Opp'n 11, ECF No. 28.

Under Pennsylvania law, the right of contribution is governed by the Pennsylvania Uniform Contribution Among Tortfeasors Act.  42 Pa.C.S.A. §§ 8321-8327.  The right of contribution exists only among joint tortfeasors.   42 Pa. C.S. § 8324(a); *EQT Prod. Co. v. Terra Servs., LLC*, 179 F. Supp. 3d 486, 493 (W.D. Pa. 2016).  Therefore, "contribution is not available for breach of contract claims."  *EQT*, 179 F. Supp. 3d at 493.  The Pennsylvania Uniform Contribution Among Tortfeasors Act defines "joint tortfeasors" as "two or more persons jointly or severally liable in

tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." 42 Pa. C.S. § 8322.

Huntington's contribution claim seemingly relies on a restatement of the same duty allegedly owed under the Investment Advisory Agreement.[3]  As currently pled, the Court finds that the Amended Third-Party Complaint lacks sufficient specificity with respect to the facts alleged in support of any potential tort liability between GCU and CIM.  As such, the Court cannot determine whether the gist of the action doctrine may be applied at this stage of the proceedings to bar any potential tort claim that could have been brought by GCU against CIM.  For these reasons alone, the Court shall grant CIM's Motion to Dismiss with respect to Huntington's contribution claim and dismiss this claim without prejudice.

## IV.    Conclusion

For the reasons discussed above, the Court will grant CIM's Motion to Dismiss and dismiss each of the claims set forth in Huntington's Amended Third-Party Complaint without prejudice. Huntington will be granted leave to file a Second Amended Third-Party Complaint within twenty-one (21) days of this Memorandum Opinion.  An appropriate Order of Court follows.

BY THE COURT:

s/*Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: June 17, 2020

cc/ecf: All counsel of record

---

[3] In support of its contribution claim, Huntington avers: "As investment advisor for GCU, it is CIM's responsibility to provide GCU with advice, instructions, and recommendations regarding the Portfolio and any specific investments comprising the Portfolio, including the GCU Notes." Am. Third-Party Compl. ¶ 28, ECF No. 21.  In support of its breach of contract claim, Huntington avers: "As GCU's investment advisor, CIM must continuously monitor the Portfolio of investments made on behalf of GCU and take all steps necessary and appropriate to maximize the value of those investments and otherwise achieve GCU's investment objectives." *Id.* at ¶ 42.